## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

WILLIAM D. MORRIS, III, and
TSION ABDETA,

    Plaintiffs,

    v.

LEON N. WEINER & ASSOCIATES, INC.,

    Defendant.

Civil Action No. TDC-16-2860

## MEMORANDUM OPINION

William D. Morris, III and Tsion Abdeta have filed this action against Leon N. Weiner &

Associates, Inc. ("LNWA") alleging housing discrimination on the basis of race, color, national

origin, age, familial status, and disability.[1]  They also allege state common law claims of breach

of contract and breach of the covenant of quiet enjoyment.  Pending before the Court is LNWA's

Motion to Dismiss.  For the reasons set forth below, the Motion is granted.

## BACKGROUND

Beginning in 2014, Morris, a 57-year-old African American man with a disability, lived

with his fiancée Abdeta, a 28-year-old African American woman born in Ethiopia, at Spellman

House Apartments in College Park, Maryland.  LNWA owns Spellman House Apartments,

which charges below-market rate rent because the United States Department of Housing and

Urban Development ("HUD") has subsidized the mortgage on the property or makes subsidy

---

[1]  Plaintiffs also named the Secretary of Housing and Urban Development ("HUD") as a
defendant.  On December 8, 2016, Plaintiffs filed a Notice of Withdrawal of Action as Against
Defendant HUD Only, which the Court construed as a Notice of Dismissal pursuant to Federal
Rule of Civil Procedure 41(a)(1)(A)(i).

payments to LNWA. The residential lease agreement between Plaintiffs and Spellman House Apartments includes the following provisions:

>       13.     General Restrictions: . . . The Tenant agrees not to: . . .
>
>               d.      have pets or animals of any kind in the unit without the prior written permission of the Landlord, but the landlord will allow the tenant to keep an animal needed as a reasonable accommodation to the tenant's disability, and will allow animals to accompany visitors with disabilities who need such animals as an accommodation to their disabilities;
>
>                                         * * *
>
>       21.     Discrimination Prohibited: The Landlord agrees not to discriminate based upon race, color, religion, creed, National origin, sex, age, familial status, and disability.

Lease ¶¶ 13, 21, Pls.' Opp'n Mot. Dismiss Exs. 2C-2E, ECF Nos. 25-5, 25-6, 25-7.

During their tenancy at Spellman House Apartments, Plaintiffs objected to certain exchanges they had with property management and staff. First, James Chandler, a maintenance technician at Spellman House Apartments, "repeatedly insult[ed]" Morris "in the presence of other residents." Am. Compl. ¶ 39, ECF No. 18. On or about April 15, 2015, Plaintiffs wrote to the regional manager, Randy Emlet, who is white, to request that Chandler be terminated. LNWA did not fire him. Plaintiffs assert that the fact that they are African American "played a role" in Emlet's decision not to terminate Chandler. *Id.* ¶ 41.

On or about January 15, 2016, when Abdeta was in an elevator with Cecil, a maintenance contractor, Cecil asked her "So when are you two getting married?" in an apparent reference to Morris and Abdeta. *Id.* ¶¶ 43, 53. Morris informed Emlet and the property manager, April Pritchett, of the incident, but they did not fire Cecil. They likewise did not fire Cecil after Morris informed them of another incident, in which Cecil sprayed air freshener into

2

Morris's face, Morris sneezed, and Cecil screamed at Morris, "What did you say?  What did you say?" in a "hostile, threatening manner." *Id.* ¶ 61.

Plaintiffs also describe two other unwelcome interactions with Spellman House Apartments staff.   First, beginning in March 2014, the maintenance supervisor, Michael Faulkner, greeted them on at least 50 occasions in common areas "by saying loudly 'Hey kids!'" *Id.* ¶ 42.  According to Plaintiffs, the "vast majority of tenants at Spellman House Apartments are significantly older than Plaintiffs," and they have never heard Faulkner address older residents with "Hey old people!" or similar greetings. *Id.* ¶¶ 30, 47.  Second, on or about June 15, 2016 at approximately 9:00 a.m., Pritchett, when visiting to conduct a routine inspection, "repeatedly and forcefully banged on Plaintiffs' front door with her fist" instead of using the door knocker, which maintenance staff typically use when seeking entry to an apartment. *Id.* ¶ 44.

Beyond these exchanges with property management and staff, Plaintiffs allege that between March 2014 and December 2015 a tenant on their floor "would not keep her dog on a leash in the common areas as is required by the rules," leading to an incident on or about July 15, 2015 during which the dog bit Morris. *Id.* ¶¶ 32-34.  Although Plaintiffs complained at least 10 times, in writing, to Emlet and the property manager about the tenant's failure to keep her dog on a leash, she was not evicted from her apartment.

In August 2016, Plaintiffs learned that their own residency at Spellman House Apartments would be terminated.  Around August 19, Emlet and Pritchett informed them that based on an incident in which one of them took money out of a wallet left in a common area, their lease was being terminated and that they would be evicted on August 23 if they did not agree before that date to leave voluntarily by August 30.  On August 24, 2016, Pritchett sent Plaintiffs a letter stating that their lease would be terminated on September 25, 2016 for the same

reasons identified in the meeting.  The letter detailed the process by which Plaintiffs could object to the action and stated that if Plaintiffs did not move out by September 25, legal proceedings would be initiated.

On August 22, 2016, Plaintiffs filed this lawsuit alleging age discrimination, housing discrimination, violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134 (2012), violations of "Plaintiffs' civil rights," Compl. ¶ 63, ECF No. 1, and state common law claims of breach of contract and of the covenant of quiet enjoyment.  After Plaintiffs filed an Amended Complaint, LNWA filed the pending Motion directed towards the original Complaint.  On November 7, 2016, the Court held a Case Management Conference, during which it accepted the Amended Complaint as the operative Complaint and directed LNWA either to supplement its Motion in light of the Amended Complaint or to state that it need not do so.  On November 11, 2016, LNWA filed a notice stating that it would not supplement its Motion and asking the Court to consider the Motion as seeking dismissal of the Amended Complaint.

## DISCUSSION

LNWA is seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  LNWA argues that Plaintiffs fail to state a claim for discrimination because they do not sufficiently allege that they were treated differently than other tenants.  It also contends that the facts asserted do not state a plausible claim for breach of contract or breach of the covenant of quiet enjoyment, and that the termination of the lease did not violate Plaintiffs' due process rights.

## I.     Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In evaluating a motion to dismiss, courts are permitted to consider documents outside the pleadings if they "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). In their Opposition to the Motion, Plaintiffs attached as exhibits a copy of their lease agreement with Spellman House Apartments and a lease termination letter dated August 24, 2016, and they do not object to the authenticity of either document. The lease agreement forms the basis of Plaintiffs' breach of contract claim, and the lease termination letter, which addresses the process by which Plaintiffs' tenancy was to be terminated, is integral to the claim that LNWA violated their "civil rights" by terminating their lease without proper notice. Am. Compl. ¶ 63. Accordingly, the Court will consider both documents.

## II.    Housing Discrimination

Plaintiffs' primary claim is that LNWA engaged in housing discrimination on the basis of race, color, national origin, age, familial status, and disability.  The Court generally construes these claims as brought under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, which prohibits discrimination in rental housing on the basis of race, color, religion, sex, national origin, familial status, or handicap. *See id.* § 3604.

### A.    Age

Plaintiffs assert that LNWA discriminated against them based on their age by allowing "its management, staff, and contractors to treat Plaintiffs differently than the rest of the tenants at Spellman House Apartments based on the fact that Plaintiffs are much younger than the vast majority of tenants who live in the building." Am. Compl. ¶ 46.  Specifically, they highlight that Faulkner routinely greeted them by loudly saying "Hey kids!" but never greeted older tenants with "Hey old people!" or similar comments.  The FHA, however, does not list age as a prohibited basis of discrimination and thus does not support Plaintiffs' claim. 42 U.S.C. § 3604.

Plaintiffs alternatively invoke the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101-6107, which "prohibit[s] discrimination on the basis of age in programs or activities receiving Federal financial assistance." *Id.* § 6101.  The statute, however, does not provide for the recovery of money damages. *See id.* § 6104(e) (referencing only injunctive relief and attorney's fees); *see, e.g., Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1290 (N.D. Cal. 2014) (holding that the Age Discrimination Act does not authorize damages); *Long v. Fulton Cty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1286-87 (N.D. Ga. 2011) (same); *Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 383-84 (M.D. Pa. 2001) (same); *see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a

court must be chary of reading others into it."). Because Plaintiffs have already moved out of Spellman House Apartments and seek only damages, they cannot obtain relief under the Age Discrimination Act. The age discrimination claim will therefore be dismissed with prejudice.

### B.     Familial Status

The Amended Complaint also includes an allegation that LNWA discriminated against Plaintiffs based on familial status by refusing to fire the maintenance contractor for asking Abdeta when she and Morris were getting married. The FHA's prohibition on discrimination based on familial status, however, protects families with children, not unmarried couples. Specifically, "familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with" either "a parent or another person having legal custody of such individual or individuals" or "the designee of such parent or other person having such custody." 42 U.S.C. § 3602(k). Under this definition of familial status, which does not encompass marital status, neither plaintiff is a member of a protected class. The claim of familial status discrimination must therefore be dismissed with prejudice.

### C.     Race, Color, and National Origin

Plaintiffs' claims of housing discrimination based on their race and color are insufficient to state a claim for relief. Plaintiffs allege that LNWA discriminated against them based on race and color when Emlet refused to fire the maintenance technician for insulting Morris and refused to fire the maintenance contractor for asking Abdeta when the couple was getting married. To establish an FHA disparate treatment claim, a plaintiff must show that "he is a member of a protected class and that he was treated differently than other tenants because of his membership in that class." *Roberson v. Graziano*, No. WDQ–09–3038, 2010 WL 2106466, at *2 (D. Md. May 21, 2010), *aff'd*, 411 F. App'x 583 (4th Cir. 2011); *cf. Coleman v. Md. Court of Appeals*,

626 F.3d 187, 190 (4th Cir. 2010) (stating that the elements of a *prima facie* case of disparate treatment under Title VII include "different treatment from similarly situated employees outside the protected class"). *See generally Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990) (noting that "[f]air employment concepts are often imported into fair housing law" and citing as an example the incorporation of the *McDonnell Douglas prima facie* proof test into Title VIII). Here, Plaintiffs' allegations are insufficient to state a plausible claim of housing discrimination based on race or color because they fail to allege facts to show that tenants of a different race or color were treated differently under similar circumstances. *See, e.g., Adam v. Wells Fargo Bank, N.A.*, No. 1:09-cv-2387, 2010 WL 3001160, at *3 (D. Md. July 28, 2010) (dismissing the plaintiff's discrimination claim where he "merely made an unadorned accusation that race, religion, or national origin motivated the Defendant's actions"); *cf. Coleman*, 626 F.3d at 190.

Plaintiffs' claims that LNWA discriminated against Abdeta on the basis of national origin fail for the same reason. Plaintiffs assert that LNWA engaged in national origin discrimination by: (1) allowing the maintenance technician repeatedly to insult Morris and refusing to fire him upon Abdeta's request; (2) refusing to evict a fellow tenant for keeping her dog off leash in common areas, in violation of building rules, after Abdeta notified management of the situation; and (3) refusing to fire the maintenance contractor after Plaintiffs informed management that Cecil had asked Abdeta when she and Morris were getting married. Although Plaintiffs allege that Abdeta is of Ethiopian national origin, and therefore a member of a protected class, the Amended Complaint provides no fact-based allegations that tenants who were of a different national origin were treated more favorably than she was under similar circumstances. Relevant information would have included, for example, whether management heeded requests to fire staff

or evict tenants when those requests were made by other tenants who did not share Abdeta's Ethiopian origin. The Court therefore grants LNWA's Motion as to Plaintiffs' claim of housing discrimination on the basis of race, color, and national origin.

Moreover, although Plaintiffs generally refer to Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d to 2000d-7, and Executive Order 11,063, 27 Fed. Reg. 11527 (Nov. 20, 1962), neither provides a plausible basis for relief. Section 601 of Title VI prohibits discrimination on the basis of "race, color, or national origin . . . under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs claim that Spellman House Apartments receives federal funding, subjecting it to Title VI. As discussed above, however, Plaintiffs do not make any factual allegations beyond conclusory statements to support the assertion that LNWA treated them differently from tenants outside the protected class. *Cf. Coleman*, 626 F.3d at 190-91 (affirming the dismissal of a Title VII discrimination claim where the "complaint conclusorily alleges that [the plaintiff] was terminated based on his race" but "does not assert facts establishing the plausibility of that allegation"). *See generally Maisha v. Univ. of North Carolina*, 641 F. App'x 246, 250 (4th Cir. 2016) (applying Title VII concepts to a Title VI claim); *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014) (same). Executive Order 11,063, meanwhile, which addresses equal opportunity in housing, affords no private right of action. *See* 27 Fed. Reg. 11527; *see also Herndon v. Hous. Auth.*, --- F. App'x ---, No. 16-2821, 2016 WL 6682101, at *1 (7th Cir. Nov. 14, 2016) (affirming the dismissal of an alleged violation of Executive Order 11,063).

### D.     Disability

Plaintiffs also allege that LNWA discriminated against Morris on the basis of his disability by: (1) allowing a maintenance technician to repeatedly insult Morris and refusing to

fire him upon his request; (2) refusing to evict a fellow tenant for keeping her dog off leash in common areas, in violation of building rules, despite complaints by Morris; and (3) refusing to terminate Cecil, a maintenance contractor, after Morris reported an incident during which Cecil sprayed air freshener into Morris's face, Morris sneezed, and Cecil screamed "What did you say? What did you say?" in a hostile, threatening manner. Am. Compl. ¶ 61. Whether the claim is analyzed under the FHA, Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, or section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 (2012), it does not state a plausible claim for relief.

The FHA bars discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2)(A). The statute defines a handicap as "a physical or mental impairment which substantially limits one or more of such person's major life activities," "a record of having such an impairment," or "being regarded as having such an impairment." *Id.* § 3602(h). A plaintiff alleging a violation of the FHA on the basis of a handicap must show that "he is handicapped and that he was either discriminated against because of his handicap or denied a reasonable accommodation necessary to allow him the same use and enjoyment of his dwelling as other non-handicapped persons." *Roberson*, 2010 WL 2106466, at *3. Here, Morris does not describe the nature of his disability and, even if he has a handicap as defined by the FHA, he has not alleged how he was treated differently from other tenants because of his handicap. The Court therefore dismisses Plaintiffs' claim to the extent that it is brought under the FHA. *See Hardaway v. Equity Residential Mgmt., LLC*, No. DKC-11-1924, 2012 WL 3903489, at *6 (D. Md. Sept. 6, 2012) (dismissing an FHA claim where, "[i]n addition to failing

to elaborate on the nature of [the plaintiff's] disability, they have not alleged a plausible nexus between her disability and the alleged discriminatory acts").

Morris also fails to state a plausible claim of disability discrimination under the ADA or the Rehabilitation Act. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act protects an individual with a disability from being "subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. A claim under either statute requires a showing that the plaintiff (1) has a disability, (2) is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of the disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). The plaintiff has a higher burden with respect to the causative link under section 504, which requires that the discrimination occurred "solely by reason of" the disability, than under the ADA, which requires that the disability "played a motivating role" in the challenged action. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469-70 (4th Cir. 1999). Here, even assuming that Spellman House Apartments, by virtue of the receipt of federal funding, is subject to Title II of the ADA or the section 504 of the Rehabilitation Act, the Amended Complaint's mere assertion that Morris has a disability is not sufficient to show that his disability is covered under either law. *See Hardaway*, 2012 WL 3903489, at *5. More importantly, Plaintiffs do not offer any facts to show that his disability was either the sole reason or a motivating factor in the decisions not to terminate the staff or evict the tenant about whom Morris complained. He has offered no

11

indication that similar complaints by a tenant without a disability were or would be treated differently. Plaintiffs therefore do not state a plausible claim for discrimination on the basis of Morris's disability.

## III.   Breach of Contract

Plaintiffs assert that LNWA breached Clause 21 of the lease agreement, which provides that the "Landlord agrees not to discriminate based upon race, color, religion, creed, National origin, sex, age, familial status, and disability." Lease ¶ 21. In support of this claim, Plaintiffs allege that: (1) LNWA allowed the maintenance technician to repeatedly insult Morris and refused to fire him upon their request; (2) the maintenance supervisor routinely greeted them by saying, "Hey kids!"; and (3) the maintenance contractor asked Abdeta when she and Morris were getting married. Am. Compl. ¶¶ 38-43.

The lease agreement does not explain what constitutes discrimination under the contract or define the terms "age," "familial status," and "disability." Under Maryland law, therefore, the objective plain language of the clause governs:

> A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed.

*Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985).

Plaintiffs do not specify in their Amended Complaint the bases on which LNWA discriminated against them in violation of the lease agreement, but the Court infers that the Plaintiffs claim that LNWA breached the lease by discriminating against them on the same grounds identified in the statutory causes of action: race, color, national origin, age, familial status, and disability. *See supra* Part II. For the reasons already discussed, Plaintiffs have not

alleged sufficient facts to establish that LNWA discriminated against them—that is, treated them differently—because of their race, color, national origin, or disability. The claim that LNWA discriminated against them based on age relies solely on the allegation that a maintenance supervisor greeted them numerous times by saying, "Hey kids!" Even if the contract term "familial status" were to be construed as relating to marital status, Plaintiffs' claim of discrimination on that basis is based solely on the allegation that they were asked multiple times by the maintenance contractor, "When are you getting married?"

Plaintiffs, however, provide no allegations that LNWA actually treated them adversely in the application of the terms and conditions of the lease because of age or unmarried status. They have identified no discriminatory treatment as compared to others in lease terms, rent amount, assigned unit, or any other benefit or service relating to their tenancy. Standing alone, the statements "Hey kids!" and "When are you getting married?" do not provide a plausible basis rising "above the speculative level" to conclude that LNWA breached the lease by engaging in discrimination within the meaning of the lease. *See Iqbal*, 556 U.S. at 678; *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Accordingly, Plaintiffs' breach of contract claim relating to the non-discrimination clause of the lease is dismissed for failure to state a plausible claim of relief.

## IV.    Breach of the Covenant of Quiet Enjoyment

Plaintiffs' claim of a breach of the covenant of quiet enjoyment is based on alleged two incidents: (1) LNWA's failure to evict a fellow tenant whose dog bit Morris and who kept her dog off leash in common areas in violation of building rules, and (2) the property manager announcing her presence at Plaintiffs' door by banging on the door with her fist instead of using the door knocker. Under Maryland law, unless otherwise stated in a lease, there is an implied

covenant of quiet enjoyment of the leased premises during the term of a lease. *Bocchini v. Gorn Mgmt. Co.*, 515 A.2d 1179, 1182 (Md. Ct. Spec. App. 1986) (citing *Baugher v. Wilkins*, 16 Md. 35, 44-45 (1860)). "The covenant 'insulates the tenant against acts or omissions on the part of the landlord, or anyone claiming under him, which interfere with the tenant's right to the use and enjoyment of the premises for the contemplated purposes.'" *Id.* (quoting *Q C Corp. v. Md. Port Admin.*, 510 A.2d 1101, 1110 (Md. Ct. Spec. App. 1986)). A landlord may be held liable for "a breach of a covenant of quiet enjoyment . . . based on disturbances by another tenant where the landlord has some measure of control over the offending tenant." *Id.* at 1184-85; *see also Matthews v. Amberwood Assocs. Ltd. P'ship*, 719 A.2d 119, 126 (Md. 1998) (quoting *Bocchini*).

Here, Plaintiffs do not present a plausible claim that the property manager's act of banging on their front door interfered with their right to use and enjoy their apartment "for the contemplated purposes," *Bocchini*, 515 A.2d at 1182, or "amount[ed] to a deprivation of 'the essence of what the landlord is to provide,'" *Stevan v. Brown*, 458 A.2d 466, 474 (Md. Ct. Spec. App. 1983) (quoting *Charles E. Burt, Inc. v. Seven Grand Corp.*, 163 N.E.2d 4, 6 (Mass. 1959)), especially where the use of their door knocker would have had the same effect.

As for the fellow tenant's dog, LNWA may have had some measure of control if that tenant's lease agreement had the same provisions as in Plaintiffs' lease, which requires written permission of the landlord for "pets or animals of any kind." Opp'n at 15, ECF No. 25-6. In addition, Plaintiffs allege that they had informed LNWA that the tenant, who lived on the same floor as Plaintiffs, had kept her dog off leash. Nevertheless, the Amended Complaint does not allege facts that would support the contention that the activity marked an actual interference with their ability to use and enjoy their unit or the common areas of Spellman House Apartments. Unlike a situation in which a landlord has failed to furnish light, heat, or elevator services where

necessary, *see Stevan*, 458 A.2d at 473-474, or where a tenant is unable to sleep or enjoy the premises because of unbearable, unabated noise from a neighbor's apartment, *see Bocchini*, 515 A.2d at 1181, 1185, Plaintiffs' limited allegations regarding the dog do not provide a basis to conclude that its activities and presence were of such a nature and duration as to prevent them from fully using their apartment or to otherwise deprive them of "the essence of what the landlord is to provide." *Stevan*, 458 A.2d at 474; *see also Jones v. New Britain Hous. Auth.*, No. CV 980488546S, 1999 WL 329706, at *3-4 (Conn. Super. Ct. Apr. 30, 1999) (dismissing a claim for breach of covenant of quiet enjoyment against a housing authority that operated the property on which the plaintiff was bitten by a dog); *Presser v. RCP Mayfield, LLC*, No. 92073, 2009 WL 1965255, at *4-5 (Ohio Ct. App. July 9, 2009) (affirming a grant of summary judgment because the "presence of dogs on the premises" did not "amount to a substantial deprivation of the beneficial use" of the plaintiff's apartment). Accordingly, the Court will dismiss Plaintiffs' breach of the covenant of quiet enjoyment claim.

## V.    Lease Termination

Lastly, Plaintiffs assert that LNWA violated their "civil rights" and engaged in housing discrimination by providing inadequate notice of termination. Am. Compl. ¶ 63. On August 11, 2016, Plaintiffs took money out of a wallet that had been left in a common area of Spellman House Apartments. On August 19, 2017, management told Plaintiffs that they could either agree by August 22 to vacate their apartment voluntarily before August 30, or face eviction within 14 days. Plaintiffs allege that this threat violated HUD rules, regulations, and guidelines, specifically a "customary" 30-day notice period prior to eviction, and thus constituted housing discrimination. *Id.* ¶¶ 56, 64.

Plaintiffs fail to state a claim for several reasons. First, the Amended Complaint does not specify the civil right allegedly violated, the HUD rule, regulation, or guideline allegedly breached, or the source of the "customary 30 day notice period." *Id.* ¶ 64. Second, even if such a requirement applies, the actual notice to vacate provided to Plaintiffs on August 24, 2016 stated that their lease would be terminated on September 25, 2016, thus providing more than 30 days' notice. Letter at 1, Opp'n Exs. 1A-1B, ECF Nos. 25-1, 25-2. Third, the due process requirements for the eviction of a tenant from a federally-assisted public housing project, *see generally Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1004 (4th Cir. 1970), are not at issue here because Plaintiffs have not alleged that they entered into formal eviction proceedings

Finally, Plaintiffs have not asserted any facts, such as examples of other tenants who were not evicted after committing a similar transgression, to support the conclusion that the termination of their lease, or the notice period provided, was motivated by race, color, national origin, age, familial status, or disability. Even construed liberally, the Amended Complaint here does not provide a sufficient basis to state a plausible claim of housing discrimination or some other civil rights violation arising from the lease termination. *See Iqbal*, 556 U.S. at 678-79; *McCleary-Evans*, 780 F.3d at 585 (stating that "more than labels and conclusions" are required to state a plausible claim for relief).

## CONCLUSION

For the foregoing reasons, LNWA's Motion to Dismiss is GRANTED.   The age discrimination and familial status discrimination claims are dismissed with prejudice.   The remaining claims are dismissed without prejudice.  A separate Order shall issue.


Date: March 27, 2017

THEODORE D. CHUANG
United States District Judge

17